FILED '03 JAN 29 14:01 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUDY C. THOMAS,                          )
                                         )
                    Plaintiff,           )      Civil No. 00-1150-JE
                                         )
              v.                         )      OPINION AND ORDER
                                         )
TRANS UNION LLC, a Delaware              )
limited liability company,               )
                                         )
                    Defendant.           )
_____)

> Robert S. Sola
> 8835 S.W. Canyon Lane, Suite 130
> Portland, OR 97225
>     Attorney for Plaintiff

> Emi A. Murphy
> 1000 S.W. Broadway, Suite 1900
> Portland, OR 97205
>     Attorney for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Judy Thomas brought this action alleging that

defendant Trans Union LLC (Trans Union) violated various

provisions of the Fair Credit Reporting Act (FCRA), 15 U.S.C.

§ 1681 et seq.  On July 29, 2002, a jury found that

1 - OPINION AND ORDER

Trans Union had negligently and willfully failed to comply with the requirements of FCRA.  The jury awarded plaintiff compensatory damages in the amount of $300,000 and punitive damages in the amount of $5,000,000.  A judgment reflecting those damages was entered on July 30, 2002.

Trans Union now moves for judgment as a matter of law. In the alternative, Trans Union moves for a new trial, or for remittitur as to both the compensatory and punitive damages. Trans Union also seeks an order reducing the judgment by the amounts plaintiff received in settlement with other defendants.

Plaintiff moves for an award of attorney fees in the amount of $125,459.50, and for an award of costs in the amount of $7,061.25.

I deny Trans Union's motion for judgment as a matter of law, alternative motion for a new trial, and motion for other post-trial relief.  I deny Trans Union's motion for remittitur as to the award of compensatory damages, and grant Trans Union's motion for reduction of the punitive damages.

I grant in part plaintiff's motions for an award of attorney fees and for an award of costs.

DISCUSSION

I.  Motions for Judgment as a Matter of Law, New Trial

A. Standards

A motion for judgment as a matter of law should be granted if the evidence, when construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.  Omega Environmental, Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1161 (9th Cir. 1997).  If substantial evidence has been presented supporting the jury's verdict, the court cannot weigh the evidence or grant the motion simply because it concludes that a contrary result is more reasonable. See William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc., 668 F.2d 1014, 1026 (9th Cir. 1981).

Even if the jury's verdict is supported by substantial evidence, a court may grant a motion for a new trial if the verdict is contrary to the clear weight of the evidence, if the evidence upon which it is based is false, or if the granting of the motion is necessary to prevent a miscarriage of justice.  Roy v. Volkswagen of America, Inc., 896 F.2d 1174, 1176 (9th Cir. 1990).  In evaluating a motion for a new trial, the court may evaluate the credibility of the witnesses, and is not required to view the evidence from the perspective most favorable to the prevailing party.  United States v. Kellington, 217 F.3d 1084, 1095 (9th Cir. 2000).

3 - OPINION AND ORDER

B. Discussion

1. Motion for JMOL, and/or a new trial and/or remittitur as to claim for willful FCRA violation

Under 15 U.S.C. § 1681n, a plaintiff may recover for willful FCRA violations.  The court instructed the jury that an act is done willfully "if it is done knowingly and intentionally, or is committed with a conscious disregard for the rights of others."  Trans Union moves for JMOL and/or a new trial and/or remittitur as to plaintiff's claim for willful violation of FCRA on the grounds that plaintiff failed to present evidence that it willfully violated the Act.  It contends that this motion should be granted whether the proper legal standard is applied, or whether the "erroneously lenient" standard on which the court instructed the jury is applied.

Trans Union's assertion that only "willful misrepresentations and intentional concealments" can support a claim for willful violation of FCRA was the subject of considerable discussion during the trial.  Then, as now, Trans Union cited authority from other jurisdictions supporting the conclusion that this legal standard, which is more strict than that applied here, is appropriate.  See, e.g., Cousin v. Trans Union Corp., 246 F.3d 359, 346-47 (5th Cir.), cert. denied, 1225 S.Ct. 346 (2001); Cushman v. Trans Union Corp., 115 F.3d

4 - OPINION AND ORDER

220 (3d Cir. 1997); <u>Stevenson v. TRW Inc.</u>, 987 F.2d 288, 294 (5th Cir. 1993); <u>Pinner v. Schmidt</u>, 805 F.2d 1258, 1263 (5th Cir. 1986). Though the Ninth Circuit has not directly addressed this issue, it has held that FCRA should be liberally construed in favor of consumers, <u>Guimond v. Trans Union</u>, 45 F.3d 1329, 1333 (9th Cir. 1995), and has implied that a "conscious disregard of reasonable procedures" is sufficient to support an award of punitive damages in <u>Andrews v. TRW Inc.</u>, 225 F.3d 1063, 1066 (9th Cir. 2000), <u>rev'd on other grounds</u>, 534 U.S. 19 (2001). In addition, district courts in this circuit have concluded that a defendant's reckless disregard of its FCRA responsibilities constitutes "willful" conduct under FCRA. <u>Mathews v. Government Employees Insurance Co.</u>, 23 F. Supp. 2d 1160, 1164 (S.D. Cal. 1998); <u>Batdorf v. Trans Union</u>, 2002 WL 1034048 (N.D. Cal, May 15, 2002). In addition, though the <u>Cushman</u> court observed that "a defendant's actions must be on the same order as willful misrepresentations or concealments" in order to support an award of punitive damages for a willful violation, it concluded that this requirement would be satisfied if the plaintiff established that the defendant had adopted its reinvestigation policy "in reckless disregard of whether the policy" violated plaintiff's rights under FCRA. <u>Cushman</u>, 115 F.3d at 227. Based upon a review of these decisions, I again

conclude that the definition of "willful" provided to the jury was correct.

I likewise conclude that plaintiff produced substantial evidence that Trans Union "willfully" violated FCRA, and that the jury's verdict on this issue was not contrary to the weight of the evidence.  The parties are thoroughly familiar with the evidence presented at trial, and I will not repeat in detail the evidence supporting the conclusion that Trans Union acted with knowing, intentional, or conscious disregard of plaintiff's rights under FCRA.  Among the most substantial evidence supporting the jury's verdict on the willful violation claim was evidence that Trans Union refused to delete information attributable to Judith Upton from plaintiff's credit reports after it knew that plaintiff was not Judith Upton, and evidence that it continued reporting that plaintiff was "also known as Judith Upton" after it knew that the statement was false.  There was substantial evidence that Trans Union did not review and consider relevant information that plaintiff provided regarding her disputed credit information, and that it reported and sold information about plaintiff that it knew to be false.  Perhaps most significant was evidence that Trans Union did not train its employees about the requirements for reinvestigating disputes, which the jury certainly could have found to demonstrate a conscious disregard of the rights of consumers, including

6 - OPINION AND ORDER

plaintiff.  Based upon the presentation of this, and other

substantial evidence presented to the jury, Trans Union's

assertion that plaintiff did not meet her burden of

establishing "willful" violations of FCRA fails.


2. Motion for JMOL on plaintiff's claim that Trans Union

violated § 1681e(b)

Section 1681e(b) provides that:

> [w]henever a consumer reporting agency prepares
> a consumer report it shall follow reasonable
> procedures to assure maximum possible accuracy
> of the information concerning the individual
> about whom the report relates.

Section 1681a(d) defines a "consumer report" as:

> any written, oral, or other communication of
> any information by a consumer reporting agency
> bearing on a consumer's credit worthiness,
> credit standing, credit capacity, character,
> general reputation, personal characteristics,
> or mode of living which is used or expected
> to be used or collected in whole or in part
> for the purpose of serving as a factor in
> establishing the consumer's eligibility for
> (A) credit or insurance to be used primarily
> for personal, family, or household purposes;
> (B) employment purposes; or (C) any other
> purpose authorized under Section 1681b of this
> Title.

Trans Union asserts that it is entitled to JMOL on

plaintiff's claim under § 1681e(b) because plaintiff failed to

introduce evidence of any Trans Union "consumer report," and

failed to offer any evidence of Trans Union's procedures for

preparing "credit reports."  Trans Union contends that

1681e(b) applies only to consumer reports that are issued to third parties, and that the evidence showed only that credit reports were sent to plaintiff.

These arguments are not persuasive.  In <u>Guimond</u>, 45 F.3d at 1333, the Ninth Circuit held that a consumer makes out a prima facie case under 1681e(b) by showing evidence "tending to show that a credit reporting agency prepared a report containing inaccurate information," and concluded that the district court had erred in holding that liability under that section arose only when a report had been transmitted to a third party.  In the present action, plaintiff produced substantial evidence supporting the conclusion that Trans Union transmitted inaccurate information bearing upon plaintiff's creditworthiness to both plaintiff and a third party.  She likewise presented substantial evidence supporting the conclusion that Trans Union did not follow reasonable procedures to assure maximum possible accuracy of credit information.


3. <u>Motion for new trial based upon court's instruction concerning "willfulness"</u>

Trans Union's contention that the court erred in instructing the jury that an act is done willfully "if it is done knowingly and intentionally or is committed with a

8 - OPINION AND ORDER

conscious disregard for the rights of others" is addressed, and rejected, above.

4. Motion for new trial and or remittitur based on contention that punitive damage award was "grossly excessive"

Trans Union contends that a new trial should be held, or that the punitive damages assessed should be eliminated or reduced, because the jury's $5,000,000 punitive damages award was "grossly excessive."

The United States Supreme Court has held that excessive punitive damage awards violate a defendant's due process rights secured under the United States Constitution. E.g., Cooper Industries Inc. v. Leatherman Tool Group Inc., 532 U.S. 424 (2001); BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996). In Gore, the Court set out three "guideposts" for courts to consider in determining whether an award is "grossly excessive." These include: (1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of the punitive damage award to actual or potential harm inflicted on the plaintiff, and (3) the difference between the punitive damages assessed and the civil penalties authorized or imposed in comparable cases. Gore, 517 U.S. at 575. The Gore Court stressed that the punitive damages imposed on a defendant should reflect "the enormity of his offense," id. (quoting Day v. Woodworth, 13 How. 363, 371 (1851)), and characterized the

9 - OPINION AND ORDER

"degree of reprehensibility of the defendant's conduct" as "[p]erhaps the most important indicium of the reasonableness of a punitive damages award . . . ." Id. The Court further observed that nonviolent crimes are less serious than crimes of violence, that trickery and deceit are more reprehensible than negligence, and that repeated misconduct, deliberate false statements, and concealment of evidence of improper motive are factors to consider in determining the degree of reprehensibility. Id. at 576-79.

Based upon my review of the relevant decisions and review of the evidence presented at trial, I conclude that the jury's award of $5,000,000 in punitive damages exceeds the limits that are permissible under the Constitution. Plaintiff presented substantial evidence from which the jury could conclude that Trans Union consciously disregarded its responsibilities under FCRA to institute reasonable policies that would assure accurate credit reports, and the jury could have found that its conduct in failing to correct the information it attributed to plaintiff and its failure to instruct its employees concerning its obligations under FCRA was reprehensible. However, the conduct was relatively low on the sliding scale of reprehensibility sketched by the Gore court, in that it did not involve violence, trickery, deceit, or deliberate concealment.

The second <u>Gore</u> factor, the relationship between the compensatory and punitive damages, also does not support the $5,000,000 punitive damage award.  There is no bright line to guide courts in determining whether an award of punitive damages exceeds the limits allowable under the Constitution. <u>See</u>, <u>e.g.</u>, <u>Pacific Mutual Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 18 (1991) (court cannot draw mathematical bright line between constitutionally acceptable and constitutionally unacceptable awards); <u>Swington v. Potomac Corp.</u>, 270 F.3d 794, 818-20 (9th Cir.), <u>cert</u>. <u>denied</u>, 122 S. Ct. 1609 (2001) (ratio between compensatory and punitive damages not very helpful in analyzing challenges to award of punitive damages); <u>Inter Medical Supplies v. EBI Medical Systems</u>, 181 F.3d 446, 470 (3d Cir. 1999), <u>cert</u>. <u>denied</u>, 528 U.S. 1076 (2000) ("We have searched vainly in the case law for a formula that would regularize [the court's role in reviewing an award of punitive damages] but have not found one.").  However, the Supreme Court has observed that more than a 4 to 1 ratio of punitive to compensatory damages might be "close to the line," <u>Haslip</u>, 499 U.S. at 23-24, and has characterized a 500 to 1 ratio as "breathtaking," <u>Gore</u>, 517 U.S. at 583.  The Ninth Circuit has affirmed a punitive damages award that was 775 times higher than the compensatory damages award, <u>Murray v. Laborers Union Local No. 324</u>, 55 F.3d 1445, 1453 (9th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1219 (1996), and has concluded that a

11 - OPINION AND ORDER

punitive damages award that was 130 times greater than the compensatory damages award had to be reduced.  Ace v. Aetna Life Ins. Co., 139 F.3d 1241, 1248 (9th Cir.), cert. denied, 525 U.S. 930 (1998).  These decisions are not particularly instructive, however, because the Supreme Court has noted that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if . . . a particularly egregious act has resulted in only a small amount of economic damages."  Gore, 517 U.S. at 582.[1]

The ratio of punitive to compensatory damages here is approximately 17 to 1.  In the absence of any clear line for determining this issue, based upon a review of decisions discussing the question, I conclude that this ratio is excessive under the evidence presented here.  As discussed below, I have concluded that the compensatory damages should not be reduced.  However, drawing all inferences in plaintiff's favor, the compensatory damages were clearly very adequate to fully compensate plaintiff for all of the injuries that the jury could have reasonably concluded were caused by Trans Union's FCRA violations, and were at the upper end of what could be considered a reasonable range.  Under the evidence presented here, I am satisfied something much closer to the 4 to 1 ratio that the Supreme Court characterized as

---

[1]Nothing in Gore or other relevant decisions implies that a different rule should apply as to noneconomic damages.

being "close to the line" is required here to satisfy the
Constitutional requirements.

The third Gore factor, comparison of the punitive damages
awarded and the potential civil or criminal penalties that
could be imposed, also supports the conclusion that the
punitive damages awarded here were excessive.  It appears that
the maximum civil penalty that could be imposed for the FCRA
violations found by the jury here is $2,500 per violation.
See § 1681s (in event of knowing violation, which constitutes
a pattern or practice of violations, Federal Trade Commission
may bring civil action to recover civil penalty of not more
than $2,500 per violation).  Assuming that Trans Union had
committed each of the 9 statutory violations alleged here on
repeated occasions in its conduct related to plaintiff's
credit reports, the maximum civil penalties that could be
assessed would amount to a minuscule fraction of the punitive
damages awarded here.

In sum, there is no clear or precise manner for
determining whether an award of punitive damages is excessive,
or for determining the limit of allowable punitive damages.
However, based upon the guidance of the relevant decisions and
my review of the evidence presented at trial, I conclude that
the maximum award of punitive damages allowable here is
$1,000,000.  In reaching this conclusion, I am influenced by
the relatively mild level of reprehensibility of Trans Union's

13 - OPINION AND ORDER

conduct, by the relatively high ratio of punitive to compensatory damages awarded, and by the relatively modest civil penalties that could have been imposed for the violations found by the jury.  Accordingly, I will enter an amended judgment reducing the punitive damages award to this amount.

5. <u>Motion for new trial and/or remittitur on grounds that $300,000 compensatory award was against the weight of the evidence</u>

Trans Union contends that it is entitled to a new trial and/or remittitur because the compensatory damages award of $300,000 was contrary to the clear weight of the evidence and "vastly at odds with federal precedent awarding damages under similar circumstances."

A plaintiff is entitled to the maximum recovery that the evidence will sustain.  See <u>Los Angeles Memorial Coliseum v. National Football League</u>, 791 F.2d 1356, 1366 (9th Cir. 1986). Plaintiff presented evidence from which the jury could have concluded that she suffered substantial emotional distress and legitimate anxiety concerning her business and personal reputation as a result of Trans Union's FCRA violations.  The jury could have reasonably concluded that plaintiff invested substantial efforts in rectifying Trans Union's errors, and that the apparent futility of those efforts caused her to

14 - OPINION AND ORDER

experience well justified frustration, anger, and emotional distress over a substantial period of time.  The compensatory damages awarded were clearly at the upper end of those which could be allowed.  However, viewing the evidence in the light most favorable to plaintiff, as I must in analyzing this motion, I conclude that the compensatory damages award should not be reduced, and that Trans Union is not entitled to a new trial on the basis of the size of that award.


6. Motion for new trial on grounds that jury was improperly instructed on negligence

     The court's instructions to the jury defined negligence as "failing to do something that a reasonably prudent person would do, or doing something that a reasonably prudent person would not do, under the circumstances that existed." Trans Union contends that this instruction improperly failed to require the jury to balance the potential harm from inaccuracy against the burden that "safeguarding against the inaccuracy" would impose on Trans Union.

     The instruction given to the jury adequately defined the term "negligence," and the motion for a new trial based upon the instruction is denied.


7. Motion for new trial based upon failure to separately list alleged violations on verdict form

15 - OPINION AND ORDER

Trans Union contends that it is entitled to a new trial because the court failed to include separate interrogatories for violations of § 1681d(b) and 1681(i). Trans Union argues that plaintiff provided no evidence supporting her claim under § 1681e(b), and that the "verdict form did not allow the jury to differentiate between this claim and Plaintiff's 1681i claim . . . ."

This argument fails. Plaintiff correctly notes that she did not assert that all of the FCRA violations she alleged constituted separate claims. Instead, plaintiff brought two claims, which alleged respectively that plaintiff negligently and willfully failed to comply with FCRA. The verdict form allowed the jury to separately address both of these claims, and the jury's verdict for plaintiff on both claims was supported by substantial evidence.


8. <u>Motion for new trial on grounds that jurors consulted</u>
<u>extraneous evidence during deliberations</u>

Trans Union contends that the court should order a new trial because the jurors consulted extraneous material during their deliberations. This contention is based on a telephone conversation between a juror and counsel for Trans Union that took place several days after trial. One of the jurors contacted Trans Union's office in Portland, Oregon, a few days after the trial and asked to speak with Trans Union's counsel

16 - OPINION AND ORDER

regarding possible misconduct during deliberations. After obtaining this court's permission, Trans Union's counsel spoke with the juror. Trans Union's counsel reports that the juror told him that one of the jurors brought a medical treatise which the jurors consulted regarding diagnoses to which plaintiff's physician had testified.

Federal Rule of Evidence 606(b) provides in relevant part that, except for testifying "on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror," a juror may not testify as to "any matter or statement" that occurred during the jury's deliberation. When a juror consults a dictionary or other source of information that has not been admitted into evidence, "the burden is generally on the party opposing a new trial to demonstrate the absence of prejudice, and a new trial is ordinarily granted if there is a reasonable possibility that the material could have affected the verdict." In Re Exxon Valdez, 270 F.3d 1215, 1247 (9th Cir. 2001) (quoting Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Serv. Co., 206 F.3d 900, 906 (9th Cir.), cert. denied, 531 U.S. 919 (2000)).

Medical terminology and diagnoses were not significant disputed issues in this action, and nothing in the affidavit concerning Trans Union's counsel's conversation with a juror implies that the medical treatise at issue here provided

jurors any information that was prejudicial to Trans Union.
There is no reasonable basis to conclude that any reference
the jurors may have made to a medical treatise harmed
Trans Union, and there is no reasonable possibility that the
material could have affected the outcome of the trial.  The
motion for a new trial on this basis is therefore denied.


8. <u>Motion to reduce judgment by amounts paid by defendants
that settled</u>

Trans Union contends that it is entitled to an offset
of any amounts that the six co-defendants paid to settle
plaintiff's claims.  Trans Union asserts that it is entitled
to this reduction based upon the "fundamental principle that a
payment made by a joint tortfeasor diminishes the claim
against the remaining tortfeasors."  <u>Seymour v. Summa Vista
Cinema, Inc.</u>, 809 F.2d 1385, 1389 (9th Cir. 1987).

This was not a tort action brought against alleged joint
tortfeasors, and Trans Union's reference to tort principles
is inapposite.  Trans Union has cited, and I have found, no
reported decisions supporting the proposition that a FCRA
defendant is entitled to an offset of amounts a plaintiff may
receive in settlement from other FCRA defendants.  The motion
to reduce the judgment on this basis is denied.

II. <u>Motion for award of attorney fees</u>

Prevailing plaintiffs are entitled to recover their reasonable attorney fees and costs under FCRA. 15 U.S.C. § 1681o; <u>Comeaux v. Brown & Williams on Tobacco Co.</u>, 915 F.2d 1264, 1273 n. 11 (9th Cir. 1990). In calculating an award of attorney fees, the court begins by determining the "lodestar" amount. <u>E.g.</u>, <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 363 (9th Cir. 1996). This is calculated by multiplying the number of hours that the prevailing party reasonably expended on the litigation by a reasonable hourly rate. <u>Id.</u> The court then assesses whether it is necessary to adjust this lodestar figure on the basis of those factors set out in <u>Kerr v. Screen Guild Extras, Inc.</u>, 526 F.2d 67 (9th Cir. 1975) that are not already subsumed in the initial lodestar calculation. The <u>Kerr</u> factors include: (1) the time and labor required, (2) the novelty and difficulty of the issues litigated, (3) the skill needed to properly perform the legal service, (4) the preclusion of other employment due to the acceptance of the work, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount at issue and the results obtained, (9) the experience, reputation, and ability of the attorney or attorneys, (10) the "undesirability" of the case, (11) the length and nature of the professional relationship between the attorney and the client, and (12) awards made in

19 - OPINION AND ORDER

similar cases, <u>Kerr</u>, 526 F.2d at 70.[2]  There is a strong
presumption that the lodestar calculation represents a
reasonable award of attorney fees.  <u>Morales</u>, 96 F.3d at 364,
n. 8.

Plaintiff seeks an award of attorney fees in the amount
of $125,459.50.  The motion is supported by affidavits,
detailed time records, and a memorandum describing the
experience of the attorneys who worked on this matter.

Plaintiff is clearly entitled to an award of attorney
fees here, and Trans Union does not generally challenge either
the award of attorney fees or the hourly rates of the
attorneys for whom recovery is sought.  Instead, it contends
that the award should be reduced because plaintiff failed to
engage in reasonable settlement negotiations, and challenges
several particular items for which recovery is sought.

Based upon my review of the material submitted, I
conclude that the hours and rates for which plaintiff seeks
recovery are generally appropriate, and that the <u>Kerr</u> factors
do not require an adjustment of the lodestar figure.  I also
conclude that Trans Union has not shown that plaintiff

---

[2]The lodestar calculation of hours and rate presumably
subsumes the factors of novelty and complexity of the issues,
the special skill and experience of counsel, the quality of
representation, the results obtained, <u>Cabrales v. County of
Los Angeles</u>, 864 F.2d 1454, 1464 (9th Cir. 1988), <u>reinstated</u>,
886 F.2d 235 (1989), <u>cert. denied</u>, 494 U.S. 1091 (1990), and
the fixed or contingent nature of the compensation arrangement.
<u>City of Burlington v. Dague</u>, 505 U.S. 557, 565-67 (1992).

unreasonably refused to engage in dialogue to explore settlement.  However, the award of attorney fees should be reduced as to particular items noted in Trans Union's memorandum in opposition to the motion for attorney fees. Plaintiff has not responded to Trans Union's objection to these particular components of plaintiff's request for attorney fees, and the objections are well taken.

Trans Union seeks the following adjustments:

-a reduction of $5,082 for work related to plaintiff's unsuccessful attempt to remand the case to state court;

-a reduction of $3,058 of the fees incurred in taking plaintiff's deposition to reflect the participation of other defendants in that deposition;

-a reduction of $1,980 for time billed for traveling to take Trans Union's deposition;

-a reduction of $2,229.50 for time plaintiff's attorneys spent communicating with attorneys who are not associated in this action;

-a reduction of $6,350.50 for fees related to plaintiff's unsuccessful motion for partial summary judgment;

-a reduction of $234 for reviewing a deposition taken in an unrelated action;

-a reduction of $351 in the amount attributed to review of a fax regarding Trans Union documents; and

-a reduction of $1,015 attributed to the preparation of a memorandum that apparently was never filed.

With these reductions, plaintiff shall recover attorney fees in the amount of $105,159.50.


### III. Plaintiff's bill of costs

Plaintiff seeks recovery of costs in the amount of $7,061.25.

Trans Union objects to the inclusion of charges for expert witness fees, postage and messenger service, parking, duplicate copies of deposition transcripts, and travel expenses for plaintiff and a witness who appeared for plaintiff. It seeks a reduction of $2,817.20 to reflect the elimination of these items.

Plaintiff has not responded to Trans Union's objections, and I find they are well taken. Accordingly, plaintiff shall recover costs in the amount of $4,244.05.


### CONCLUSION

Defendant Trans Union's motions for Judgment as a matter of law (# 158-1) and for a new trial (# 158-2) are DENIED.

Trans Union's motion for remittitur (# 158-3) is GRANTED in part and DENIED in part. The motion is GRANTED as to the award of punitive damages, which will be reduced to $1,000,000 in an amended judgment, and is DENIED as to the award of compensatory damages.

Trans Union's motion for other post-trial relief (# 158-4) is DENIED.

Plaintiff's motion for an award of attorney fees (# 163) is GRANTED in part, and plaintiff shall recover attorney fees in the amount of $105,159.50.

Plaintiff's motion for an award of costs (# 167) is GRANTED in part, and plaintiff shall recover costs in the amount of $4,244.05.

DATED this 29th day of January, 2003.

John Jelderks
U.S. Magistrate Judge